**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| AUDREY ROSENSTEIN, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>CLARK COUNTY SCHOOL DISTRICT, *et al.*,<br><br>Defendants. | 2:13–cv–1443–JCM–VCF<br><br>**ORDER** |

This matter involves Audrey and Craig Rosenstein's section 1983 and tort claims against Clark County School District, its administrators, and various teachers and aids. Before the court is Defendants' motion to stay discovery (#54[1]). The Rosenstein's opposed (#57); and Defendants replied (#58). For the reasons discussed below, Defendants' motion is denied.

**BACKGROUND**

Audrey and Craig Rosenstein are the parents of N.R. In May 2012, N.R. was six-years old and a first grader at Defendant Clark County School District's facility, Cozine Elementary School. (Amend. Compl. (#41) at ¶¶ 17–19). N.R. is a special needs student. (*Id.* at ¶ 17). N.R.'s teachers and/or teacher's aides at Cozine were Brittany Maxwell and Ashley Hoye. (*Id.* at ¶¶ 10–11). On May 24, 2012, while N.R. was attending school at Cozine, something went wrong. "[P]hysical marks and bruises" appeared on N.R.'s "person." (*Id.* at ¶ 19).

---

[1] Parenthetical citations refer to the court's docket.

1

On June 21, 2013, N.R.'s parents filed suit against Maxwell, Hoye, and a variety of school officials and administrators, including James Guthrie, Rorie Fitzpatrick, Dwight Jones, Pedro Martinez, Samuel Rado, and Leigh Moser. (Compl. (#1-1) at ¶¶ 6–11). The Rosensteins also sued Nevada, Nevada Department of Education, Clark County, and Clark County School District. (*Id*. at ¶¶ 14–17). The only penitent factual allegations contained in the Rosensteins' initial complaint were that N.R. went to school on May 24, 2012, which resulted "in physical marks and bruises upon [N.R.'s] person." (*See id*. at ¶¶ 20–23).

Defendants moved to dismiss Rosenstein's complaint on the grounds that it was factually deficient. (*See* Def.'s Mot. to Dismiss (#3) at 14–20). In response, the Rosensteins proffered additional facts, not contained in the complaint. (*See* Pl.'s Opp'n (#16) at 4). These included the facts that: (1) N.R.'s psychosocial-rehabilitation worker picked N.R. up from school; (2) the psychosocial-rehabilitation worker immediately noticed unexplained bruising on N.R.'s body; (3) the psychosocial-rehabilitation worker immediately noticed that N.R. was acting in an usual manner; (4) N.R.'s mother immediately called the school to investigate; (5) Cozine staff told conflicting stories about the cause of N.R.'s injuries; and (6) Cozine staff refused to give N.R.'s mother a copy of the incident report. (*Id*.) In light of the additional facts contained in the Rosensteins' opposition, the parties stipulated to withdrawing the motion to dismiss and permitting the Rosensteins' to file an amended complaint.

The amended complaint was filed on January 3, 2014. The amended complaint's salient factual allegations state: (1) "[o]n May 24, 2012, Maxwell and/or Hoye intentionally grabbed and/or pinned the special needs student, [N.R.], in an overly aggressive manner, resulting in physical marks and bruises upon his person and the intentional and negligent infliction of emotion distress;" (2) "[N.R.'s] parents learned of the incident from [N.R.'s] psychosocial rehabilitation worker, who noticed that [N.R.] was behaving strangely and that he had unexplained bruising on his body;" (3) "[w]hen Audrey Rosenstein

2

called Cozine to find out what happened to her [child], Defendants' initial response was to blame [N.R.] for the injuries"; (4) "Defendants' 'daily process note' for May 24, 2012, does not mention any restraint by Maxwell or any other person, nor does it indicates that [N.R.] did anything to harm [N.R.'s self];" and (5) "[w]hen CCSD Police Detective Caldwell investigated the incident, Defendant Maxwell knowingly provided him false information and attempted to hinder, delay, and obstruct his investigation of the incident." (*See* Amend. Compl. (#41) at ¶¶ 19, 23–25, 29).

On January 24, 2014, Defendants renewed their motion to dismiss, again on the grounds that the Rosensteins' complaint is factually deficient. (*See* Def.'s Mot. to Dismiss (#49) at 3). Again, the Rosensteins' opposed and proffered additional facts, not contained in the amended complaint. For instance, in place of the conclusory allegation that "Maxwell knowingly provided [Detective Caldwell with] false information and attempted to hinder, delay, and obstruct his investigation of the incident," the opposition states that Detective Caldwell sought a warrant for Maxwell's arrest as a result of Maxwell's obstruction of the investigation. (*See* Pl.'s Opp'n (#50) at 5:18–19) (citing Amend. Compl. (#41) at ¶ 29). The opposition does not provide any evidentiary support for this additional factual allegation.

On May 2, 2014, Defendants filed the instant motion to stay discovery pending resolution of their motion to dismiss. Defendants argue, among other things, that the Rosensteins "failed to plead facts" in support of their complaint. (Pl.'s Opp'n (#54) at 11:18). Once again, the Rosensteins opposed and proffered additional facts, not contained in the amended complaint. For instance, in place of the conclusory allegation that Defendants caused "physical marks and busies upon [N.R.'s] person," the Rosensteins state that N.R.'s mother examined him after school and saw "two even marks going down the length of his arms, as if someone had squeezed him really hard" and that N.R. told his mother that Maxwell "put her knee on his chest." (Pl.'s Opp'n (#57) 5–6). Additionally, in place of the unsupported

3

assertion that Detective Caldwell sought a warrant for Maxwell's arrest, the Rosensteins submitted a copy of Caldwell's affidavit in support of the arrest warrant. (*See* Caldwell Aff. (#57-5) at 1). Defendants replied, arguing, among other things, that the Rosensteins' complaint is still factually deficient. (Reply (#58) at 9). This order follows.

## **LEGAL STANDARD**

When evaluating a motion to stay discovery while a dispositive motion is pending, the court initially considers the goal of Federal Rule of Civil Procedure 1. The guiding premise of the Rules is that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Discovery is expensive. The Supreme Court has long mandated that trial courts should resolve civil matters fairly but without undue cost. *Brown Shoe Co. v. United States*, 370 U.S. 294, 306 (1962). This directive is echoed by Rule 26, which instructs the court to balance the expense of discovery against its likely benefit. *See* FED. R. CIV. P. 26(B)(2)(iii).

Consistent with the Supreme Court's mandate that trial courts should balance fairness and cost, the Rules do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600–01 (C.D. Cal. 1995). Federal Rule of Civil Procedure 26(c)(1) states, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This rules authorizes the court to stay discovery.

Whether to grant a stay is within the discretion of the court. *Munoz–Santana v. U.S. I.N.S.*, 742 F.2d 561, 562 (9th Cir. 1984). The party seeking a stay, however, has the burden "to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." FED. R. CIV. P. 26(c)(1). Satisfying the "good cause" obligation is a challenging task. A party seeking "a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray v. First*

4

*Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (citing *Blankenship v. Hearst Corp.* 519 F.2d 418, 429 (9th Cir. 1975)).

Generally, imposing a stay of discovery pending a motion to dismiss is permissible if there are no factual issues raised by the motion to dismiss, discovery is not required to address the issues raised by the motion to dismiss, and the court is "convinced" that the plaintiff is unable to state a claim for relief. *Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984); *White v. Am. Tobacco Co.*, 125 F.R.D. 508 (D. Nev. 1989) (citing *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) *cert. denied*, 455 U.S. 942 (1982). Typical situations in which staying discovery pending a ruling on a dispositive motion are appropriate would be where the dispositive motion raises issues of jurisdiction, venue, or immunity. *TradeBay, LLC v. Ebay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011).

Courts in the District of Nevada apply a two-part test when evaluating whether a discovery stay should be imposed. *Id.* (citations omitted). First, the pending motion must be potentially dispositive of the entire case or at least the issue on which discovery is sought. *Id*. Second, the court must determine whether the pending motion to dismiss can be decided without additional discovery. *Id*. When applying this test, the court must take a "preliminary peek" at the merits of the pending dispositive motion to assess whether a stay is warranted. *Id*. The purpose of the "preliminary peek" is not to prejudge the outcome of the motion to dismiss. Rather, the court's role is to evaluate the propriety of an order staying or limiting discovery with the goal of accomplishing the objectives of Rule 1.

**DISCUSSION**

Defendants' motion to stay raises two general questions: (1) whether the court is "convinced" that the Rosensteins' amended complaint is unable to state a claim for relief and (2) whether "good cause" exists to impose a discovery stay. Before discussing these questions, the court briefly addresses two preliminary matters concerning the Rosensteins' filings.

### I.     <u>**Two Preliminary Matters**</u>

The court briefly addresses two unrelated but important rights that appear to be adversely affected by the Rosensteins' filings: N.R.'s privacy rights and the public's right to review the court's docket.

Federal Rule of Civil Procedure 5.2 governs redacted filings. In pertinent part, Rule 5.2 states that "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor," the party making the filing may include only "the minor's initials." FED. R. CIV. P. 5.2. This rule is designed "to protect privacy" and remind parties "that any personal information not otherwise protected by sealing or redaction will be made available over the internet." FED. R. CIV. P. 5.2. Advisory Comm. Notes (2007). The Advisory Committee Notes also state that the court "is not required to review documents filed with the court for compliance with this rule." *Id*. Rather, "[t]he responsibility to redact filings rests with counsel and the party or non-party making the filing." *Id*.

Presumably, the Rosensteins may voluntarily choose to waive N.R.'s right to privacy and publicly file documents containing N.R.'s full name. If, however, the Rosensteins inadvertently failed to redact N.R.'s name, they are reminded that Rule 5.2 permits the Rosensteins to do so. The court will consider permitting the Rosensteins to amend their prior filings upon an appropriate motion supported by points and authorities.

The Rosensteins' opposition raises a second issue that concerns the public's right to access court documents. Local Rule 10-5(b) governs sealed submissions. In pertinent part, it provides that "papers filed with the Court under seal shall be accompanied by a motion for leave to file those documents under seal." In *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), the Ninth Circuit recognized that "[h]istorically, courts have recognized a 'general right to inspect and copy public

6

records and documents, including judicial records and documents.' This right is justified by the interest of citizens in "keep[ing] a watchful eye on the workings of public agencies." *Id*. at 1178 (citing *Nixon v. Warner Commc'n, Inc*., 435 U.S. 589, 597 & n. 7 (1978)). Accordingly, to file a document attached to a dispositive motion under seal, a party must demonstrate "compelling reasons." *Id*. at 1179. By contrast, to file a document attached to a non-dispositive motion under seal, a party must demonstrate "good cause." *Id*. at 1180.

The Rosensteins failed to comply with Local Rule 10-5(b) and *Kamakana*. Unless the Rosensteins demonstrate why their opposition or the exhibits should not be unsealed by Monday, July 7, 2014, the Rosensteins' opposition will be unsealed.

## II. Whether the Court is "Convinced" that the Rosensteins' Complaint is Unable to State a Claim for Relief

When determining whether a plaintiff is unable to state a claim for relief in the context of a motion to stay, the court takes a "preliminary peek" at the merits of the pending motion to dismiss and considers whether the complaint "shows" that the pleader is entitled to relief under Rule 8. *TradeBay, LLC*, 278 F.R.D. at 600. Accordingly, this section begins by reviewing the standard governing motions to dismiss before turning to the merits of the Rosensteins' complaint.

### A. *Legal Standard*

Federal Rule of Civil Procedure 12 governs motions for judgment on the pleadings. Under Rule 12(b)(6), the court may dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). This occurs when the complaint does not include "[a] short and plain statement of the claim showing that the [plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Supreme Court's decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) provide that a complaint's allegations must cross "the line

from conceivable to plausible" to satisfy Rule 8's requirements. *Iqbal*, 556 U.S. at 680; *Twombly*, 550 U.S. at 546 (characterizing the line as separating "possibility and plausibility"). The Court prescribed a two-step procedure for determining whether a complaint's allegations cross that line.

First, the court the court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "speculative," *see Twombly*, 550 U.S. at 555, "merely consistent with liability," *Iqbal*, 556 U.S. at 678, "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim, *id*. at 681, or couch legal conclusions as factual allegations. *Id*. at 697.

Second, the court must determine whether the complaint states a "plausible" claim for relief. *Id*. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

If the factual allegations, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id*. (citing FED. R. CIV. P. 8(a)(2)). When the allegations in the complaint have not crossed the line from conceivable to plausible, it must be dismissed. *Twombly*, 550 U.S. at 570. When determining whether a complaint survives a motion to dismiss, the court is generally prohibited from considering matters outside the pleadings. *See* FED. R. CIV. P. 12(d).

**B.**     ***The Rosensteins' Amended Complaint Fails to Allege Sufficient Factual Matter***

Following *Iqbal*, the court begins its analysis of the Rosensteins' amended complaint by identifying the factual allegations that are not entitled to the assumption of the truth. *Iqbal*, 556 U.S. at

679–80. Factual allegations are not entitled to the assumption of truth if they "couch legal conclusions as factual allegations." *Id*. at 697.

The Rosensteins' amended complaint contains several such allegations. For instance, the amended complaint alleges that "[o]n May 24, 2012, Maxwell and/or Hoye intentionally grabbed and/or pinned the special needs student, [N.R.], in an overly aggressive manner, resulting in physical marks and bruises upon his person and the intentional and negligent infliction of emotion distress." (Amend. Compl. (#41) at ¶ 19). This is a legal conclusion. Similarly, the amended complaint alleges that that N.R. "was aware and apprehensive of Maxwell and/or Hoye's intentional and harmful physical contact, before and during the course of said contact." (*Id.* at ¶ 20). This is also a legal conclusion. The complaint amended also alleges that "[w]hen CCSD Police Detective Caldwell investigated the incident, Defendant Maxwell knowingly provided him false information and attempted to hinder, delay, and obstruct his investigation of the incident." (*Id.* at ¶ 29). This too is conclusory. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) ("A statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result."). Because these allegations are legal conclusions, they are not entitled to the assumption of the truth and do not plausibly "show" that the Rosensteins are entitled to relief. *See Iqbal*, 556 U.S. at 679 (citing FED. R. CIV. P. 8(a)(2)).

The amended complaint's remaining factual allegations that relate to N.R.'s alleged abuse are that (1) "[N.R.'s] parents learned of the incident from [N.R.'s] psychosocial rehabilitation worker, who noticed that [N.R.] was behaving strangely and that he had unexplained bruising on his body;" (2) "[w]hen Audrey Rosenstein called Cozine to find out what happened to her [child], Defendants' initial response was to blame [N.R.] for the injuries"; and (3) "Defendants' 'daily process note' for May 24, 2012, does not mention any restraint by Maxwell or any other person, nor does it indicates that [N.R.] did anything to harm [N.R.'s self]." (*See* Amend. Compl. (#41) at ¶¶ 23–25).

9

Standing alone, these facts do not state a claim upon which any form of relief can be granted. These facts only show that on May 24, 2012, N.R. went to school and came home "behaving strangely" with "unexplained bruising on his body." Any parent would find this very alarming; but *Iqbal* requires more. The Rosensteins' complaint must "show" "more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. The heart of the Rosensteins' opposition appears to misunderstand *Iqbal*. For instance, the Rosensteins argue that their complaint is meritorious because:

> Plaintiffs expressly alleged numerous negligent and intentional acts by the Defendants in their Amended Complaint, such as the failure 'to comply with the investigatory provisions of NRS 391, NRS 385, and NAC 391 regarding the licensing process for special needs teachers/aides/assistants,' and the failure 'to supervise [N.R.] while at Cozine.' [. . .] Plaintiffs expressly alleged that these [Defendants] breached their 'duty to properly hire, train, and supervise each of their staff and/or other agents,' specifically by hiring unqualified personnel to operate the special needs program.

(Pl.'s Opp'n (#57) at 3:3–11). These are conclusions. They carry no weight. In *Iqbal's* words, these allegations "amount to nothing more than a 'formulaic recitation of the elements'" of a claim and couch legal conclusions as factual allegations. *Iqbal*, 556 U.S. at 697–80. Accordingly, the court's "preliminary peek" at the merits of the pending motion to dismiss "convinces" the court that the Rosensteins' amended complaint fails to state a plausible claim because it only shows "the mere possibility of misconduct."

This, however, is not the end of the court's inquiry.

### III.     Whether "Good Cause" Exists to Impose a Discovery Stay

Satisfying the "good cause" obligation is a challenging task. *Id*. A party seeking "a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Blankenship*, 519 F.2d at 429.

Good cause is not present here. In 2012, N.R. was six-years old. N.R. is a special-needs student with limited communication skills who was allegedly so traumatized that he is unable to speak about the

10

abuse. (*See* Pl.'s Opp'n (#57) at 5:14–16). This has obstructed the Rosensteins' ability to prosecute their claim because it has limited their ability to discover and plead relevant facts. (*Id*. at 3:15–17).[2]

Accordingly, the Rosensteins' allegations have evolved as litigation has progressed. The Rosensteins' initial complaint merely stated that "N.R. went to school on May 24, 2012, which resulted "in physical marks and bruises upon [N.R.'s] person." (Compl. (#1-1) at ¶¶ 20–23). Their amended complaint, while still deficient under Rule 8, added that N.R.'s teacher obstructed a police officer's investigation into the alleged abuse. (*See* Amend. Compl. (#41) at ¶ 29).

Now, although not alleged in any complaint, the Rosensteins have provided the court with numerous detailed facts about the incident. For instance, the Rosensteins provided the court with new information about N.R.'s injuries. (*See* Exhibit 1 (#57-1) at 2). A report from Cozine states that N.R.'s mother examined him and discovered scratches and bruises in areas that N.R. could not reach himself. (*Id*.) The report also states that N.R. had "two even marks going down the length of his arms, as if someone squeezed him really hard." (*Id*.) The report also states that N.R. told his mother that Maxwell "put her knee on [N.R.'s] chest." (*Id*.) And, the report also states that Cozine's principal, Mr. Rado, told N.R.'s mother that "Ms. Maxwell retrained [N.R.] by holding both of his arms down." (*Id*.) The Rosensteins also produced a letter from Dwight Jones, the Superintendent of Schools, stating that N.R. was also bruised in his "underarms." (Letter (#57-4) at 1).

A copy of Detective Caldwell's affidavit in support of an arrest warrant was also submitted to the court. (Caldwell Aff. (#57-5) at 1–3). Although not alleged in any complaint, the affidavit contains several salient facts, including that: (1) Maxwell stated that she restrained N.R. in front of Hoye by gently holding N.R.'s wrists; (2) Caldwell interviewed N.R. who said that Maxwell restrained him by

---

[2] The Rosensteins' filings have consistently stated that discovery has been difficult because N.R. has limited communication skills and Defendants are hesitant or unwilling to produce relevant material.

wrapping her arms under his armpits because N.R. was throwing his shoes; (3) Caldwell interviewed Hoye who said that Maxwell wrapped her arms under N.R.'s arms and across his chest; (4) photographs taken by N.R.'s mother showed injuries consistent with N.R. and Hoye's description of events; and (5) Maxwell lied to Caldwell and obstructed his investigation, which caused Caldwell to conduct additional interviews and extend the criminal investigation by approximately twenty days. (*Id.*)

Defendants argue that discovery should be stayed because some of the Defendants are entitled to qualified immunity or discretionary-act immunity and that the Rosensteins have failed to plead sufficient factual matter to support their state law claims. As discussed above, the court agrees that the Rosensteins' complaint is factually deficient under Rule 8(a)(2). Defendants' legal arguments regarding qualified immunity and discretionary-act immunity are, therefore, moot.

However, the court disagrees that there is good cause to stay discovery. The record indicates that discovery has shed considerable light on N.R.'s alleged abuse and provided the Rosensteins with enough facts to satisfy Rule 8's pleading requirements. Under the controlling legal standard, the court should order a stay of discovery if it is "convinced" that the plaintiff is unable to state a claim for relief. *See TradeBay, LLC*, 278 F.R.D. at 600; *Rae*, 725 F.2d at 481; *Wood*, 644 F.2d at 801. The court is "convinced" that the operative complaint is factually deficient; but the court is far from "convinced" that the Rosensteins' action warrants dismissal without leave to amend.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendants' motion to stay discovery (#54) is DENIED.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

1
2
3

IT IS FURTHER ORDERED that the Rosensteins' opposition will be UNSEALED on Monday, July 7, 2014, unless the Rosensteins demonstrate good cause for sealing their opposition or the exhibits attached to it.

IT IS SO ORDERED.

DATED this 23th day of June, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

13